Shannon W. Martin
ASBA No. 0105028
GRACE HOLLIS LOWE HANSON & SCHAEFFER, LLP
One Ridgegate, Ste. 215
Temecula, CA 92590
(951) 676-3445
(951) 676-9294- Fax
smartin@gracehollis.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| DARYL MEADOWS, ) | Case No. 3:05-cv-00032-TMB |
| )  Plaintiff, ) | |
| vs. ) | **OPPOSITION TO PLAINTIFF'S (re-filed) MOTION *IN LIMINE* FOR EXCLUSION OF WITNESS AND EVIDENCE** |
| SCHLUMBERGER TECHNOLOGY CORPORATION, a foreign corporation, ) | |
| )  Defendant. ) | |

Defendant Schlumberger Technology Corporation hereby opposes plaintiff Daryl Meadows' (re-filed) Motion and Memorandum in limine for Exclusion of Witnesses and Evidence.

### I. Introduction

Plaintiff Meadows is outraged because he was caught on tape performing routine physical activities that contradicts his sworn testimony and information that he provided to his doctors and experts. Mr. Meadows has never propounded discovery requests seeking disclosure of surveillance videos or other impeachment-type information, and Civil Rule 26(a) expressly exempts impeachment evidence from the mandatory disclosure rule. Mr. Meadows

1

completely ignores Civil Rule 26 and the relevant case law discussing the timing and disclosure of impeachment evidence and argues for preclusion based on a two-pronged theory that Schlumberger violated this Court's Scheduling Order, and that Dr. Pitzer's Supplemental Expert report would not be helpful to the jury. The plaintiff's motion is crippled by empty protests and unsupported legal theories and must be denied.

## II. Factual Background

Mr. Meadows was allegedly injured in an oilfield accident that occurred on October 16, 2003, while employed for Nabors Alaska Drilling, Inc. Mr. Meadows alleges that he suffers from Complex Regional Pain Syndrome (CRPS) as a result of this accident. The nature and severity of his injuries are in dispute as is the extent of Mr. Meadows' physical abilities and limitations, if any, and whether Mr. Meadows is capable of engaging in non-sedentary work. Mr. Meadows initiated a third-party lawsuit against defendant Schlumberger, alleging that Schlumberger was negligent for causing his injuries.

**A.    Mr. Meadows' sworn testimony.**

Defendant Schlumberger took plaintiff Meadows' deposition on August 11, 2005. Mr. Meadows was asked pointed questions about his activity level before and after the accident, and was also asked to describe his typical day since the accident:

```
Q.   Speaking of activities, do you stay active currently?
A.   No.
Q.   And did you before the accident?
A.   Extremely active.
Q.   Doing?
A.   Worked on motorcycles, riding motorcycles, played a
     little golf, doing repair work on home or friend's or
     family's homes, such nature.  Just, I
     was pretty much always on the go.
```

2

OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* FOR EXCLUSION OF WITNESS AND EVIDENCE
Daryl Meadows v. Schlumberger Technology Corporation (Case No.3:05-cv-00032-TMB)

```
 1      Q.    Since the accident none of those things?
        A.    No.
 2      Q.    So what does a - what does a routine day look like for
              you these days?
 3      A.    I get up.  I'll do as many leg exercises from what
              they've taught me in physical therapy as I can.  And I'll
 4            go to the backyard and sit under a shade tree and throw a
              ball with the dog, and go back in the house for a while,
 5            and go out to my mother-in-law, father-in-law's, visit
              with them for a minute.  In the evenings I'll do some
 6            exercises again to what I can do …
```

*See* Daryl Meadows deposition transcript, at 46-47 [emphasis added], relevant excerpts attached as Ex. A.  Mr. Meadows described his current pain level on a scale of one to ten as off the scale and in the range of "15 to 20."  *Id.*, at 50-51.  In a related line of questioning, Mr. Meadows was asked whether he is physically capable of performing an "administrative" job of the nature which he held between 1998 and 2001 *before* going to work for Nabors, and years before the accident:

```
        Q.    If you went to Mr. Owen [former supervisor] or Mr. Owen
              came to you today and said, Mr. Meadows, we really liked
              the job that you did, you left under good terms, we want
              you to come back and work for us.  What would you say?
        A.    I don't know that I have the capability to continue the
              job that I had with them.
        Q.    Okay.  Based on the description that you just gave to me
              … which entailed administrative duties, you don't believe
              that with you physical condition you would be able to do
              these administrative tasks?
        A.    No sir.  There would be no possible way I could do the
              inspections or walk through the job site.
        Q.    Okay.  Why?
        A.    Because on a construction job site *you're up and down
              ladders*, on scaffolding, things of that nature, and
              there's-*there's no way I could do that.*
```

*Id.*, at 32-33 [inserting "former supervisor" for explanation; emphasis added].

**B.    Information that Mr. Meadows provided to (or which was observed by) the doctors and experts.**

1.    *Medical report dated April 28, 2004 (Dr. Clark)*: "Mr. Meadows reports that as a result of his pain, he is not able to

3

work, is unable to do handyman type chores for the family …" (Ex. B, at p.3 of 4);

    2.   *Dr. Pitzer's Expert Report served January 31, 2006*: "He relates he does use a cane for essentially any walking." (Ex. C, at page 4 of 8);

    3.   *Vocational assessment by Margaret Kelsay dated January 12, 2006*: "He advises that even his clothes touching his leg is painful and he was observed to walk with a cane. When asked if this was required, he stated that he was not able to walk without the cane…" (Ex. D, at p. 4 of 7);

    4.   *Functional Capacity Evaluation (Summary Report) by Ginny Haight dated September 13, 2005*: "The client utilized the assistance of a cane during the entire course of the evaluation." (Ex. E, at DEF 217);

    5.   *Functional Capacity Evaluation (comprehensive report) by Ginny Haight dated September 13, 2005*: "Mr. Meadows reports his functional tolerances as follows: … unable to climb ladders … unable to balance without 'walking cane' …" (Ex. F, at p. 5 of 20); "The client did not wish to attempt ladder climbing, secondary to anticipated increase in R LE symptoms." (*Id.*, at p. 11 of 20);

    6.   *Electrodiagnostic consultation dated January 4, 2006 (Dr. Shah)*: "He is unable to toe and heel walk due to pain." (Ex. G, at p. 2 of 2);

    7.   *Psychological evaluation by Dr. Bradley dated December 13, 2005*: "His social life is restricted and he does not get out very often … On a typical day now, he may sit outside if the weather is nice, play "fetch" with his dog, and spend time on the computer. He may watch football on the television for fun and

4

OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* FOR EXCLUSION OF WITNESS AND EVIDENCE
Daryl Meadows v. Schlumberger Technology Corporation (Case No.3:05-cv-00032-TMB)

occasionally go out to eat.  About once monthly he may visit some friends … He can drive himself to destinations but finds it necessary to make frequent stops to rest or stretch.  He also notes he is 'a little bit nervous' when driving in the city."  "  (Ex. H, at p. 2 of 4).

8.   *Telephone interview with Dr. Pitzer on December 12, 2005*: "He does not note any changes in his gait and still uses a cane all the time for ambulation … (Ex. C, at p. 6 of 9).

### C.   Information revealed by the surveillance videos.

On August 22, 2005, Schlumberger retained Winston Services of Oklahoma to capture video surveillance of plaintiff Daryl Meadows who resides in Oklahoma.  In the ensuing months, Winston investigators captured a number of video tapes depicting Daryl Meadows as follows:

- Relying on the aid of a walking cane when observed in public places;

- Walking without the aid of the cane when observed at his rural home;

- Running everyday errands around town, including gassing up his vehicle (without the aid of the cane);

- Driving round trip from his rural home to the construction site of a new home (one hour each way on a daily basis);

- While on location at the construction site, climbing up and down a ladder (independently and without aid) while engaged in putting siding on the new home;

- While on location at the construction site, picking up and carrying the ladder to his truck (again independently and without aid, and without the aid of the cane);

- While on location at the construction site, using the cane more as a pointing device than a walking device.

5

OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* FOR EXCLUSION OF WITNESS AND EVIDENCE
Daryl Meadows v. Schlumberger Technology Corporation (Case No.3:05-cv-00032-TMB)

**D.    <u>Timing of Schlumberger's disclosures</u>.**

The parties exchanged expert reports on January 31, 2006.[1] *See* Ex. C.  On February 2, 2006, counsel for Schlumberger forwarded five video "web-links" via email to Dr. Pitzer for his review and comment.  See Ex. I.  On February 3, 2006, Schlumberger furnished a supplemental disclosure to the plaintiff containing four of five surveillance disks.[2] *See* Ex. J. On February 6, 2006, Schlumberger furnished supplemental responses to plaintiff's second discovery requests in which Schlumberger disclosed all documents exchanged with its experts.[3]  See Ex. K.  Also on February 6, 2006, Schlumberger furnished a supplemental expert report of Dr. Pitzer

---

[1] The parties stipulated to extend the expert report deadline in order to give the plaintiff additional time to undergo diagnostic studies of his right leg, and to forward the results of these studeis to their respective expers.  *See* Stipulation to Extend Deadline for Reports from Retained Experts, Order dated December 22, 2005.

[2] There should have been five surveillance disks to correspond to the five "web-links" forwarded to Dr. Pitzer on February 2, 2006; however, Schlumberger did not have the fifth disk dated September 14, 2005, in its possession when it furnished supplemental disclosures on February 3, 2006. Therefore, copies of the disk dated September 14, 2006, were immediately requested from Winston and this fifth disk was supplemented to the plaintiff along with unedited video (per the plaintiff's request) on February 17, 2006.  Incidentally, the disk dated September 14, 2005, is not terribly exciting; this is not the disk, for example, that depicts the plaintiff climbing up and down a ladder.  Quite simply, this disk would have been produced on February 3, 2006, along with the other four disks if Schlumberger had had a copy of the disk to produce at that time.

[3] Plaintiff's second discovery requests were dated August 24, 2005 and sought production of in pertinent part, "[e]ach and every *document* which was provided to any expert witness defendant expects to call at trial, regarding defendant's retention of such expert to testify in this case and any and all *documents* provided to such expert for review by the expert following the expert's retention by defendant in the case."  Schlumberger issued its original responses to plaintiff's second discovery responses on September 26, 2005, providing that Schlumberger would produce the requested information with its expert disclosures.  Although the original deadline for exchanging expert reports was October 31, 2005, the parties had stipulated to extend the deadline for exchanging expert reports until January 31, 2006.

**OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* FOR EXCLUSION OF WITNESS AND EVIDENCE**
**Daryl Meadows v. Schlumberger Technology Corporation (Case No.3:05-cv-00032-TMB)**

which sets forth Dr. Pitzer's opinion based on his review of the surveillance video. *See* Ex. A to plaintiff's Motion. Finally, Schlumberger furnished an amended final witness list on February 7, 2006, and a second amended witness list on February 9, 2006. The witness list was amended for the limited purpose of naming the Winston investigators as impeachment witnesses.

### III. Argument

Fed. R. Civ. P. 26 provides as follows:

> (a) Required Disclosures: Methods to Discovery Additional Matter.
> (1) Initial Disclosures. Except in categories of proceedings specified in Rule 26(a)(1)(E), or to the extent otherwise stipulated or directed by order, a party must, without awaiting a discovery request, provide to the other parties:
>
> (A) the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information;
> (B) a copy of, or description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may us to support its claims or defenses, *unless solely for impeachment …*

**A. Plaintiff Meadows did not propound discovery requests regarding the existence of videotapes and/or impeachment witnesses, and therefore, Schlumberger had no affirmative duty to disclose this evidence any earlier than it did.**

In *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513 (5th Cir. 1993), *cert. Denied*, 114 S. Ct. 1536 (1994), the Court ruled that a videotape was inadmissible where the defendant had refused to respond completely to a specific interrogatory asking about videotapes. Here, the plaintiff did not propound discovery requests asking about surveillance materials (or impeachment witnesses), and Schlumberger is not taking the position, as did the appellant in *Chiasson,* that such materials are privileged or not

7

discoverable under Fed. R. Civ. P. 26(b).[4]  Plaintiff could have (and perhaps should have) propounded discovery requests asking about surveillance videos and impeachment witnesses.  He did not.  Consequently, Schlumberger had no obligation to produce the surveillance videos or witness names any earlier than it did because this is impeachment evidence under Civil Rule 26 (a).  See Section B *infra.*

### B. The surveillance videos and Winston Investigators constitute impeachment evidence under Civil Rule 26.

"Substantive evidence is that which is offered to establish the truth of a matter to be determined by the trier of fact." *See Chiasson*, 988 F.2d at 517.  "Impeachment evidence, on the other hand, is that which is offered to 'discredit a witness … to reduce the effectiveness of [his] testimony by bringing forth evidence which explains why the jury should not put faith in [his] testimony." *Id*.  As discussed, in Chiasson the Court held that a videotape should have been excluded because it was not disclosed prior to trial and in response to a specific discovery request.  The court also held that the videotape was not impeachment evidence because plaintiff's testimony was that she could not do routine activities without pain and the videotape did not directly refute her testimony about the pain.  *Id*.

In contrast to *Chiasson,* the Meadows' videos directly contradict Mr. Meadows' sworn testimony, as well as information that Mr. Meadows provided to the doctors and experts regarding his physical abilities and limitations and ability to engage in

---

[4] For this reason, the court does not need to address the issue of whether defendant had a duty to disclose this impeachment evidence pursuant to Civil Rules 33 and 34.

8

non-sedentary work (*i.e.*, Mr. Meadows' testimony that he must use a cane to walk; that his daily routine consists of sitting on the back deck and throwing a ball to the dog; that he cannot work; that he rarely leaves his house; that he cannot climb a ladder.). *See* Sections I.A and B supra.  The Meadows' videos will be used to discredit Mr. Meadows at trial, and "to reduce the effectiveness of [his] testimony by bringing forth evidence which explains why the jury should not put faith in [his] testimony." *See Chiasson*, at 517.  The Meadows' videos will not be used to establish the truth of a matter to be determined by the trier of fact, *i.e.*, whether Mr. Meadows is indeed in pain and suffering from CRPS. *Contrast Dehart v. Wal-Mart*, 2006 WL 83405 (W.D.Va.) (a videotape that documented a series of events leading to the alleged injury of the plaintiff *on the date in question* was being offered to establish underlying fact surrounding the incident; and, therefore, the substantive value of this type of evidence predominated over its impeachment value).[5]

Nor does Dr. Pitzer's review and comment on the surveillance videos (pursuant to his supplemental report) change the analysis of whether the videos constitute impeachment evidence.  Dr. Pitzer's comments on the surveillance video became necessary because the videos directly contradict Mr. Meadows' sworn testimony and information that Mr. Meadows provided to Dr. Pitzer as well as the other doctors and experts.  Importantly, even if the videos bear some minimal substantive value on the issue of whether Mr. Meadows

---

[5] It should also be noted that *Dehart* the court granted plaintiff's Motion to Compel and ordered the defendant to produce the surveillance video *in response to an affirmative discovery request*.

9

**OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* FOR EXCLUSION OF WITNESS AND EVIDENCE**
**Daryl Meadows v. Schlumberger Technology Corporation (Case No.3:05-cv-00032-TMB)**

1  is or is not suffering from CRPS, <u>Dr. Pitzer's original opinion
2  remained unchanged even after reviewing the videos.  The videos
3  merely confirmed Dr. Pitzer's original opinion that Mr. Meadows'
4  demonstrates a high likelihood of symptom magnification and/or
5  somatization</u>.[6]   In other words, the surveillance videos have
6  independent significance in terms of their impeachment value and
7  are merely supportive and not determinative of Dr. Pitzer's
8  original conclusions.
9      And finally, with regard to plaintiff's argument that
10 defendant intentionally failed to timely disclose the Winston
11 investigators on its lay witness list, Civil Rule 26 (a) expressly
12 exempts impeachment witnesses from mandatory disclosures, and
13 again, plaintiff never propounded interrogatories requesting a
14 listing of impeachment witnesses.  Defendant seasonably
15 supplemented its witness list with the names of the Winston
16 investigators immediately following Dr. Pitzer's deposition.[7]

---

[6] Dr. Pitzer defined somatization to be "[p]sychological symptoms are manifested with physical complaints."  *See* Dr. Pitzer's deposition, p. 69, Ex. L hereto.
Compare Ex. C hereto (Pitzer's original expert report) with Ex. A to plaintiff's Motion (Pitzer's supplemental expert report).  In his supplemental report, Dr. Pitzer details the findings of the videos, including that Mr. Meadows appears not to require a cane for ambulation, and that he is seen climbing a ladder at a construction site.  These observations are entirely inconsistent with information that Mr. Meadows provided to Dr. Pitzer at the IME on September 13, 2005, and follow-up telephone interview on December 12, 2005.  *See* Section I.B. *supra.*

[7] The plaintiff's attorney, Robert Sparks, made an unreasonable demand that the defendant pay for each of the investigators to fly to Fairbanks to be deposed.  See Ex. M.  Defendant's attorney rejected Mr. Sparks' patently unreasonable demand but has agreed to allow the plaintiff to depose the Winston investigators at a mutually agreed time and place. See Ex. N.
Incidentally, the fact that Schlumberger amended its witness list after Dr. Pitzer's deposition is inconsequential because even if disclosure had come before Dr. Pitzer's deposition, the plaintiff would still be crying foul, and more importantly, it would not have made any difference in terms of the

10

**OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* FOR EXCLUSION OF WITNESS AND EVIDENCE**
**Daryl Meadows v. Schlumberger Technology Corporation (Case No.3:05-cv-00032-TMB)**

### C. The timing of Schlumberger's disclosures did not violate the Court's Scheduling Order.

The plaintiff loosely argues, pursuant to Fed. R. Civ. P. 16(f), that Schlumberger violated this Court's Scheduling Order, and therefore, a preclusion order is proper under Civil Rule 37 (a)(2)(B). Motion, at 5. But the plaintiff fails to show the court just exactly how Schlumberger violated the court's Scheduling Order or why this court should regard Schlumberger as a "disobedient party" under Rule 37(a)(2)(B). Moreover, plaintiff fails to cite to case law to support the exclusion of impeachment witnesses based on a theory of untimely disclosure.

This court's Scheduling and Planning Order is dated May 14, 2005, and provides that "discovery shall be conducted in accordance with Rules 26 through 37, D.Ak. LR 30.1, 32.1, and 37.1, and the discovery plan contained in the status report of the parties …" In the report of the parties ("Scheduling and Planning Conference Report" signed by plaintiff's counsel on May 6, 2005, and defense counsel on May 9, 2005), the parties agreed that there would be no variations to the standard limitations imposed by the civil rules, and that supplementation under Rule 26(e) would occur in 30-day intervals. Accordingly, both the Scheduling Order and the report of the parties require that discovery be conducted in accordance with the civil rules.

As discussed in Section II.A and B. *supra*, defendant Schlumberger had no affirmative duty to disclose (or otherwise supplement) the surveillance video or the names of Winston

---

plaintiff's preparation for Dr. Pitzer's deposition.

OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* FOR EXCLUSION OF WITNESS AND EVIDENCE
Daryl Meadows v. Schlumberger Technology Corporation (Case No.3:05-cv-00032-TMB)

1  investigators any earlier than it did.  Plaintiff argues that
2  defendant's actions "sand-bagged plaintiff's medical expert (Dr.
3  Schade), whose deposition was taken by the defendant prior to any
4  disclosures on February 3, 2006."  Motion, at 6.  The plaintiff
5  cries foul because Schlumberger disclosed the videos after Dr.
6  Schade's deposition, but fails to cite to any rule or case that
7  would require disclosure of impeachment evidence in advance of the
8  deposition of an adverse party's expert witness.  Schlumberger had
9  <u>no duty</u> to under Rules 26, 33 or 34, to disclose the surveillance
10 video or to supplement its witness list in advance of Dr. Schade's
11 deposition so that Dr. Schade could watch the video and then modify
12 his opinions to accommodate the plaintiff's position.

   **D.   Plaintiff's argument for exclusion under Evidence Rule 702 is without merit**.

   Plaintiff argues that Dr. Pitzer's supplemental report should be excluded because "it is not helpful to the jury in this case and invades the jury's fact-finding."  Motion, at 6.  In support of this bald theory for exclusion, plaintiff cites to Fed. R. Evid. 702[8], and *U.S. v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002). *Finley* is a criminal case in which the court considered whether the District Court's exclusion of expert testimony was proper under Fed. R. Evid. 702 and as a sanction under Fed. R. Crim. P. 16(b)(1)(C).  Plaintiff Meadows brazenly (or perhaps, unwittingly)

---

[8]"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

12

cites to **page 1007** of the *Finley* decision in support of his theory for exclusion, but page 1007 contains merely a background discussion and procedural summary of *the District Court finding* that the expert's testimony "would not be helpful to the jury," and therefore, exclusion was proper under Fed. R. Evid. 702.

In *Finley,* of course, <u>the 9th Circuit reversed the District Court on the question of whether Rule 702 exclusion was proper</u>, and held that the District Court had abused its discretion "when it found that [. . .] expert opinion did not exceed the common knowledge of the average layperson." *Id*., at 1013.  "Our case law recognizes the importance of expert testimony when an issue appears to be within the parameters of a layperson's common sense, by in actuality, is beyond their knowledge." *Id*.  The *Finley Court* adopted a common sense inquiry for determining when an expert's testimony will be helpful to a jury: "[w]hether the untrained layman would be qualified to determine intelligently and to the best degree, the particular issue without enlightenment from those having a specialized understanding of the subject matter involved." *Id.*  Applying this test to the underlying facts in *Finley*, the 9th Circuit held that "the average layperson was not qualified to assess *Finley's* mental condition without the assistance of an expert's specialized understanding."  *Id*., at 1013-14.

As discussed in detail in the sections above, the purpose of the Meadows' video is to impeach Mr. Meadows' testimony regarding the extent of his physical limitations, and in particular, his inability to engage in non-sedentary work.  The purpose of the video is <u>not</u> to disprove Mr. Meadows' contention that he is in pain and suffering from CRPS, but merely to show that Mr. Meadows is not

13

being forthright with his doctors who have diagnosed his condition. Dr. Pitzer testified in his deposition as follows:

> Basically looking at video over four different months of late last year, it shows him walking without a cane for different periods of time, standing gas - filling up his truck, walking on what appeared to be a home construction site, which is usually uneven ground. I suspect he does not require a cane for ambulation based on what I saw. It also showed him standing on a ladder. So I think he's again, able - and doing some sort of work, difficult to tell exactly. But it appears that he has better function than what he'll tell me when he comes to the office. So the cane is not required. And also based on the diagnostic testing, I wouldn't anticipate that he would require a can for stability of his gait because he has normal knee on MRI, normal knee on arthroscopy, normal thigh muscle by EMG and by MRI, no evidence of an inflammatory arthropathy or other condition. So I don't think he really needs a cane. And I thin the video confirms that.

*See* Pitzer depo., at 69, Ex. L hereto.

CRPS is a condition that is largely based on the subjective complaints of the patient and doctors must rely on their patients in diagnosing this condition. The average lay juror is not qualified to determine "intelligently, and to the best degree," how the video supports Dr. Pitzer's original opinion that Mr. Meadows' demonstrates a high likelihood of symptom magnification and/or somatization. *See* Plaintiff's Motion, Ex. A (Dr. Pitzer's supplemental report). Dr. Pitzer is a trained physiatrist with experience dealing with CRPS patients; enlightenment from Dr. Pitzer will be important to the jury's understanding of this evidence.

### III. Conclusion

Schlumberger's supplemental disclosures do not violate the civil rules or this Court's Scheduling Order. The videos directly contradict Mr. Meadows' sworn testimony regarding his physical abilities and limitations, and therefore constitute pure

14

impeachment evidence.  Schlumberger had no affirmative duty to disclose the videos or the names of the Winston investigators any earlier than it did.  Dr. Pitzer's testimony will help the jury understand the video in light of the nature of Mr. Meadows' alleged medical condition, and is not subject to exclusion under Fed. R. Evid. 702, or the reasoning set forth in the *Finley* decision.

For the reasons set forth herein, the plaintiff's (re-filed) Motion and Memorandum *in limine* for Exclusion of Witnesses and Evidence must be denied.

DATED: August 28, 2006

GRACE HOLLIS LOWE
HANSON & SCHAEFFER
Attorneys for Defendant

By:  s/ Shannon W. Martin
Shannon W. Martin
One Ridgegate, Ste. 215
Temecula, CA 92590
Telephone:  951-676-3445
Facsimile:  951-616-9294
Email: smartin@gracehollis.com

I certify that on August 28, 2006, a copy of the foregoing was served by ECF on:

Robert A. Sparks   sparkslawoffice@yahoo.com

and by mail on:
Mark Colbert, Esq.

By:   s/Shannon W. Martin
      Grace Hollis Lowe
      Hanson & Schaeffer

15

**OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* FOR EXCLUSION OF WITNESS AND EVIDENCE**
**Daryl Meadows v. Schlumberger Technology Corporation (Case No.3:05-cv-00032-TMB)**