# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

In the Matter of:

## Daryl Meadows v. Schlumberger Technology Corporation

A05-032-CV

DEPOSITION OF:

## NEIL L. PITZER, M.D.

DATE TAKEN: February 7, 2006

PAGES: 1-74

REPORTED BY: Stacy Armstrong, RMR

**H+G**

EXHIBIT ____L____
PAGE __1__ OF __2__

Hunter + Geist, Inc.

(303) 832-5966

- www.huntergeist.com
- depo@huntergeist.com

1900 Grant Street, Suite 800
Denver, Colorado 80203
Fax: (303) 832-9525
Toll Free: 1-800-525-8490

Your Partner in Making the Record  Court Reporting & Videoconferencing

**69**

1   A. Yes.
2   Q. And what are those opinions?
3   A. Basically looking at video over four different
4   months of late last year, it shows him walking without a
5   cane for different periods of time, standing gas --
6   filling up his truck, walking on what appeared to be a
7   home construction site, which is usually uneven ground.
8   I suspect he does not require a cane for ambulation
9   based on what I saw. It also showed him standing on a
10  ladder. So I think he's, again, able -- and doing some
11  sort of work, difficult to tell exactly. But it appears
12  that he has better function than what he'll tell me when
13  he comes to the office. So the cane is not required.
14      And also based on the diagnostic testing, I
15  wouldn't anticipate that he would require a cane for
16  stability of his gait because he has normal knee on MRI,
17  normal knee on arthroscopy, normal thigh muscle by EMG
18  and by MRI, no evidence of an inflammatory arthropathy
19  or other condition. So I don't think he really needs a
20  cane. And I think the video kind of confirms that.
21  Q. What is somatization?
22  A. Typically it's going to be psychological
23  symptoms are manifested with physical complaints.
24  Q. Does Dr. Bradley note a likelihood of
25  somatization in this instance?

**70**

1   A. Some of the testing that Mr. Meadows completed
2   suggested a high level of somatization on his testing.
3   Q. And did your examination and findings -- Was
4   your examination and findings consistent with that
5   finding in Dr. Bradley's report?
6   A. I think when I examined him, again, I still
7   had some questions about underlying pathology that
8   needed to be clarified. Now that we've had the
9   diagnostic testing, I think that there is a high
10  likelihood of somatization or malingering.
11      MR. MARTIN: Nothing further. Thank you.
12          EXAMINATION
13  BY MR. COLBERT:
14  Q. Regarding the atrophy that you brought up,
15  Doctor, and the fact that he had none when you saw him,
16  none that you noted when you saw him in September,
17  2005 -- Now, he had been through treatment regimen with
18  several doctors over that two-year period, hadn't he?
19  A. Intermittently, yes.
20  Q. Before you saw him?
21  A. Yes.
22  Q. Okay. And the goal of that treatment is to
23  get rid of the atrophy, isn't it one of the goals?
24  A. Well, the goal of treatment is going to be to
25  decrease pain so he can rehabilitate. But if somebody's

**71**

1   not exercising, you won't reverse atrophy. I can't give
2   you a drug to reverse muscular atrophy. I can't give
3   you an injection to reverse it. So, unfortunately, it's
4   good old-fashioned hard work to reverse atrophy. So at
5   least when I saw him, I did not see any atrophy.
6   Q. But it's not surprising after someone's been
7   through treatment with several doctors over two years
8   that their atrophy would get better, is it?
9   A. I suspect there was never significant atrophy
10  in his case. I mean, that's my opinion.
11  Q. But his several treating doctors disagree with
12  you, don't they?
13  A. They documented up to 1 centimeter of atrophy
14  which is not -- If you look at the AMA guidelines for
15  impairment, they require at least a 2-centimeter change
16  in circumferential measurement to consider that
17  significant. And I think that's likely pretty accurate,
18  especially in a big muscle like the thigh. In a small
19  muscle like the forearm, a centimeter is probably
20  significant, but a centimeter -- And there's variability
21  with measurements. It's hard to get very, very accurate
22  measurements for atrophy. So 1 centimeter is probably
23  not significant, and clearly I didn't see any atrophy
24  when I saw him.
25  Q. And then I thought you said earlier that

**72**

1   atrophy wasn't important regarding the four CRPS
2   criteria anyway?
3   A. That's correct.
4   Q. Okay. And then I'm going to mark that as
5   Plaintiff's Exhibit 2. Is that the report you referred
6   to earlier?
7   A. That's part of it. I have actually a lot
8   more, some of which are records from the outside, and
9   then some additional notes that I think that Ginny
10  probably did as part of her report.
11  Q. Okay.
12  A. Because my reports --
13  Q. Okay. What do you have as part of her report
14  that --
15  A. Let me see here.
16  Q. -- you testified on? On the functional
17  capacity evaluation --
18  A. I have 20 pages of report and you have
19  something less than that.
20  Q. Okay. But when you testified, you've been
21  referring to your report, correct?
22  A. Yes.
23  Q. And that's a functional capacity evaluation of
24  Ginny Haight?
25  A. Yes.