```
 1                  IN THE UNITED STATES DISTRICT COURT

 2                      FOR THE DISTRICT OF ALASKA

 3   DARYL MEADOWS,                    )
                                       )
 4                  Plaintiff,         )
                                       )
 5       vs.                           )
                                       )
 6   SCHLUMBERGER TECHNOLOGY           )
     CORPORATION,                      )
 7                                     )
                    Defendant.         )
 8   _____)
     Case No. A05-032-CV
 9

10      30(b)(6) VIDEOTAPE DEPOSITION OF NABORS ALASKA DRILLING
                           JOHNIE N. HAYNES
11
     APPEARANCES:
12
        FOR THE PLAINTIFF:          MR. ROBERT A. SPARKS
13                                  Law Office of Robert A. Sparks
                                    1552 Noble Street
14                                  Fairbanks, Alaska 99701
                                    (907) 451-0875
15
        FOR THE DEFENDANT:          MR. SHANNON W. MARTIN
16                                  Lane Powell PC
                                    Attorneys at Law
17                                  301 West Northern Lights Blvd.
                                    Suite 301
18                                  Anchorage, Alaska 99503
                                    (907) 264-3318
19

20

21

22

23

24

25
```

R & R COURT REPORTERS

810 N STREET
(907) 277-0572/Fax 274-8982

ANCHORAGE, ALASKA  99501

EXHIBIT   L
PAGE  1  OF  2

Page 79

MR. MARTIN: .....the evidence.
A  .....I think it was a finding, but it wasn't listed as a – as a critical factor.
Q  (By Mr. Sparks) And you'd agree that Schlumberger was aware that there was a pressure problem, there was some kind of a leak?
A  Yes, they were aware of it.
Q  And the – the thought was that it was the swab val- – the – the master valve that was leaking?
A  Correct.
Q  They closed the swab valve and they thought the pressure had stopped?
MR. MARTIN:  Object to the form,.....
A  Correct.
MR. MARTIN:  .....vague.
Q  If – if an electrician comes out to the rig to do some wiring work is – is Mr. Woods (sic) going to be responsible for all the work that electrician does or – or can Mr. Woods (sic) rely on that electrician to do his work in a safe and proper manner?
A  Mr. Woods (sic) would have a – a toolbox or a pre-job meeting with the electrician to ensure that he does know what he's doing and review his procedures.
Q  And – and your knowledge of – of Mr. Woods (sic) – well, Nabors' experience with Mr. Woods (sic) is that

Page 80

he's a safe employee, isn't he?
A  Correct.
Q  In fact, he wouldn't be working for Nabors unless he was a safe employee, would he?
A  That's right.
Q  You have very high standards, don't you?
A  Yes.
Q  And this mistake that Schlumberger made by having wrong rams in the – in the BOP, that could have killed everyone on the rig, couldn't it?
A  It's – it's possible.
Q  If there had been a blowout?
A  If there had been a blowout, yeah, it could put everybody at risk, yes.
Q  This risk analysis procedure that's in your – in your – your – your – I guess your procedures book, that's an ideal, isn't it?
A  Yes.
Q  You're not saying that every time somebody does a job in Prudhoe Bay that they follow that procedure every time, do you?
A  No. It's merely a guideline and a prompt.
Q  We don't know why or when this needle valve was closed prior to this incident involving the rams being shot out of the BOP, do we?

Page 81

(1) A  No.
(2) Q  You're being represented today by the attorney – the
(3) same attorney that's representing Schlumberger in this
(4) case, aren't you?
(5) A  Yes.
(6) Q  And he's representing you as your attorney at the
(7) deposition today?
(8) A  Yes.
(9) Q  Wouldn't you agree that Schlumberger – well, the –
(10) Mr. Tilbury was in the best position to know what the
(11) – what the – what the work and the risk involved in
(12) changing out the rams was?
(13) A  Yes.
(14) Q  And he could have called a safety meeting at anytime if
(15) – if he thought that there was any issues that needed
(16) to be addressed, couldn't he?
(17) A  That's correct.
(18) Q  And the problem with the simultaneous operations is is
(19) that there's a possibility that – that when they're
(20) doing this work down in the cellar that if they don't
(21) know that there's somebody up – working up above that
(22) they might turn on a valve and release some pressure,
(23) correct?
(24) A  Correct.
(25) Q  And – and in the case that we're talking about right

Page 82

(1) now, to – all the information that we know is that
(2) there was no valve that was opened and that there was
(3) nothing done by Vetco-Gray in the cellar to cause any
(4) pressure to go up into the lubricator or the BOP at the
(5) time of the incident, correct?
(6) A  That's correct.
(7) Q  So that's just a possible danger as far as a sime op,
(8) isn't it?
(9) A  Correct.
(10) Q  What percent of fault do you think for – should be
(11) assigned to Nabors for this incident, from one to a
(12) hundred?
(13) A  Boy, you know, I don't know if I'm the one to really
(14) tell – say who – who's at fault or what amount of
(15) fault,.....
(16) MR. MARTIN:  I'm just going to object, that
(17) calls.....
(18) A  ..... you know, I –.....
(19) MR. MARTIN:  .....for a legal conclusion.
(20) A  .....I'm an investigator, and I don't try to fix blame
(21) or fault or – and I – like I said earlier, you know,
(22) we try to learn from this incidents, you know, we put
(23) all the findings together and hopefully we can prevent
(24) it from happening again. So.....
(25) Q  (By Mr. Sparks) Would you agree that the – the –

EXHIBIT ____L____
PAGE __2__ OF __2__