Shannon W. Martin
ASBA No. 0105028
GRACE HOLLIS LOWE HANSON & SCHAEFFER, LLP
One Ridgegate, Ste. 215
Temecula, CA 92590
(951) 676-3445
(951) 676-9294- Fax
smartin@gracehollis.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| DARYL MEADOWS, ) | Case No. 3:05-cv-00032-TMB |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| SCHLUMBERGER TECHNOLOGY ) | **DEFENDANT'S TRIAL BRIEF** |
| CORPORATION, a foreign ) | |
| corporation, ) | |
| ) | |
| Defendant. ) | |

COME NOW Defendant Schlumberger Technology Corporation, by and through its attorneys of record, Grace Hollis Lowe Hanson & Schaeffer LLP, and hereby submits its Trial Brief in the captioned matter.

### I.   FACTUAL BACKGROUND

On October 16, 2003, Nabors Alaska Drilling, Inc. was operating one of its drilling rigs (Nabors Rig 33E) on Alaska's North Slope in an oilfield owned and operated by BP Exploration Alaska, Inc. Defendant Schlumberger Technology Corporation (d/b/a in Alaska as Schlumberger Oilfield Services) was subcontracted to perform work on this Nabors' rig. At approximately 1830 hours on October 16, 2003,

a Schlumberger crew (assisted by two Nabors' crew members, including plaintiff Meadows) was attempting to dislodge a wireline valve out of a blow out prevention device (BOP) when the valve suddenly ejected under pressure, and contacted Mr. Meadows' right thigh. At the time of this ejection, the BOP was connected to a live well "tree" at the rig floor level, and the bleed valve on the BOP was closed.

## II.  LIABILITY

Pursuant to this Court's Order, dated October 3, 2005, Schlumberger will seek to allocate fault to Nabors at trial pursuant to AS 09.17.080. *See* Docket No. 19.

This accident occurred on a Nabors drilling rig, and Nabors is responsible for coordinating and communicating efforts among personnel on its rig, including its own employees, and the employees of subcontractors retained to do specialized work on its rig. Nabors is responsible for this accident by and through the negligence of its former driller, Jim Wood, who failed to call a pre-job safety meeting in order to establish work priorities in light of new safety concerns on the rig, i.e., the fact that tree servicing was required (and would be commencing) in order to fix one or more leaking valves.

The plaintiff's myopic vision of this case is that Schlumberger failed to double check the bleed valve on the BOP prior to commencing work.[1] Plaintiff's theory of the case overlooks the big picture of what takes place on a drilling rig.

At the time of the accident, there were three different crews present on Nabors Rig 33E: Schlumberger, Vetco Gray, and Nabors. Schlumberger and Vetco were working on different ends of a live well tree – Schlumberger was on the rig floor and Vetco was in the cellar.

---

[1] There is no evidence to show who actually closed the bleed valve.

The crews from Schlumberger and Vetco could not see each other, nor were they aware of each other's presence on the rig.

Nabors' Health and Safety Program and Policy Manual establishes a key principle applicable to drillers as follows: "Drillers are the hazard identification champions and are responsible for understanding and facilitating the hazard identification and mitigation process." Essentially, the driller is like a traffic cop, and when the traffic cop fails to direct traffic, accidents happen, which is exactly what happened in this instance.

Upon arriving at the rig and after checking in with Mr. Wood, Vetco was sent to the cellar to service the well tree.  Mr. Wood failed to call a pre-job safety meeting (i.e., to "huddle" the crews), which would have provided a forum for a comprehensive risk assessment in light of the significance of a leaking well tree that required servicing, and further would have allowed the crews to establish work priorities.  The Vetco and Schlumberger crews were allowed to perform simultaneous operations; in essence made "sitting ducks."  The accident intervened before the Vetco service technician could adequately troubleshoot and service the well tree.  Had Schlumberger known to wait just five minutes while the Vetco tech did his job, the accident would not have happened.

### III.  DAMAGES

Darryl Meadows claims that this accident has caused him to experience persisting pain in his right leg, necessitating the use of a walking cane and precluding him from engaging in oilfield-type work, and other non-sedentary work, for the remainder of his work life. Mr. Meadows claims that his pain results from a medical condition known as RSD or CRPS I.

### A. Unethical Fee Arrangement – Dr. Schade's treatment and billing not reasonable and necessary.

Between October 16, 2003 (the date of the accident) and November 2005 (when plaintiff retained his expert, Dr. Schade), Mr. Meadows' medical treatment was limited to the following:

- two weeks of physical therapy (January 15 through January 28, 2004),
- limited treatment with Dr. Hines in January 2004,
- limited treatment with Dr. Noe between April and September 2004, during which he received one lumbar sympathetic block, and
- limited treatment with Dr. Montgomery beginning in February 2004, and ending with an arthroscopic knee surgery in November 2004.

Mr. Meadows initially consulted with his expert, Dr. Schade on November 21, 2005. Then, by letter to Dr. Schade dated November 28, 2005 (just one week later), Mr. Meadows' attorney, Mark Colbert, officially retained Dr. Schade as an expert in this case. Mr. Colbert's letter to Dr. Schade is telling:

"Per our representation of Daryl in the above-referenced action which resulted from an explosion on October 16, 2003, this letter guaratees payment of the above-referenced account from the settlement funds obtained in this matter."

*See* Ex. A hereto.

Dr. Schade's expert report is dated November 26, 2005, wherein Dr. Schade opined that Mr. Meadows was suffering from CRPS I, and was in need in future medical treatment totaling nearly $1,000,000. Knowing full well that Mr. Meadows had undergone very little conservative therapy in the two years following the accident, Dr. Schade's recommendations included no conservative therapy options, and

4

**DEFENDANT'S TRIAL BRIEF**

only the most invasive and lucrative treatment options, including a spinal cord stimulation trial and permanent implant. Dr. Schade's incentive to "overtreat" seems relatively obvious, as does his incentive to diagnose future medical treatment at exorbitant costs of nearly one million dollars.

Defendant has objected to any and all treatment and billing records from Dr. Schade (which to date already exceed $250,0000), as Dr. Schade is not a treating doctor, he is the plaintiff's medical expert and has been guaranteed payment from the outcome of this litigation, regardless of cost. Defendant's past medical treatment with Dr. Schade, including any and all future medical treatment recommended by Dr. Schade, is the product of an unethical fee arrangement, and therefore cannot be considered reasonable and necessary, and must be excluded.[2]

**B.   Prior symptoms and injuries raising issue of causation.**

Schlumberger has uncovered a prior job application for Mr. Meadows from 1997 in which Meadows writes that he previously broke his "wrist, arm, and leg." This information is filled out in Mr. Meadows' own handwriting and his signature appears at the bottom of the application, yet Mr. Meadows denied under oath that he previously broke his leg. Furthermore, when Schlumberger's IME expert, Dr. Pitzer asked Mr. Meadows about this record, Meadows denied ever breaking his leg.

On March 30, 2006, Dr. Schade testified that he inquired with Mr. Meadows about the prior broken leg and Mr. Meadows did not deny

---

[2] Defendant will ask the court to take judicial notice of the AMA Code of Ethics and analogous codes, proscribing against contingency physician fee agreements. At the very least, Schlumberger will ask for a jury instruction specifying that any and all treatment provided by Dr. Schade may be viewed as the product of a fee arrangement that is proscribed against by the AMA Code of Ethics and analogous codes.

breaking his leg, which is, of course, a tacit admission.[3] Amazingly, Dr. Schade did not inquire further, which is shocking given that roughly eight weeks earlier, on February 3, 2006, at Dr. Schade's discovery deposition, Dr. Schade knew nothing about the self-reported broken leg.  Apparently Schade inquired with Meadows after the discovery deposition, which is reportedly when Meadows "did not deny" the report.  Up until this inquiry, Meadows had never told Dr. Schade about the prior broken leg, nor showed him any records suggesting that this may have occurred.  Even more, Mr. Meadows filled out standard medical questionnaires in which he outright denied any and all prior injuries.

Other medical records from physical therapist, Sheri Hall, report that Mr. Meadows sustained multiple fractures in a motor vehicle accident as a teenager; yet again, Mr. Meadows denied under oath that this information pertains to him.  To confirm the source of this information, defendant conducted Sheri Hall's deposition and found that Mr. Meadows had indeed told Ms. Hall that he had sustained multiple fractures in a motor vehicle accident as a teenager.

Schlumberger uncovered other medical records for Daryl Meadows, dated October 19, 2001 (about two years prior to the accident) that state: "Patient reports hands and feet chronically cold, often sweaty, his hands and his feet are as cold in 68 degree weather as they are in 8 degree weather."

According to medical journal articles cited to by plaintiff's medical expert, Dr. Schade, CRPS I is a condition that primarily affects the hands and feet, and includes rapid temperature variations.

Of course, as with the issue of the prior broken leg, Mr. Meadows

---

[3]Defendant has proposed a jury instruction regarding tacit admissions in this context.

6

**DEFENDANT'S TRIAL BRIEF**

denies experiencing any symptoms of CRPS prior to this accident.

**C.   Impeachment evidence showing failure to mitigate damages.**

Schlumberger obtained video surveillance of Mr. Meadows spanning a four month time period (August through December 2005). Sometimes he uses the cane, sometimes he does not. Investigators also tracked Mr. Meadows coming and going from his home during the work week on a regular time schedule, typically 8am to 6pm. Investigators tracked Mr. Meadows' destination to a new construction site. The property is registered to Mr. Meadows' bother, Mike Meadows. Mr. Meadows was observed coming in and out of the house, again sometime with the cane, sometimes without. He was observed climbing up and down a ladder, which Dr. Schade has testified that he could only do in a "life-saving circumstance." This surveillance video tends to undermine Mr. Meadows' testimony, as well as the testimony of his experts, that he is physically incapable of engaging in gainful employment.

Additional evidence will be presented to show that Mr. Meadows has failed to mitigate his losses. Plaintiff worked for Fenix as a Project Superintendent for approximately three years prior to going to work for Nabors Alaska Drilling, Inc. in 2001. During that time, Mr. Grant Owen was Mr. Meadows' direct supervisor. Plaintiff assumes that he could not perform the job duties that he previously held with Fenix, yet neither he nor his experts ever bothered to contact Mr. Owen following the incident. Mr. Owen will testify as to whether Mr. Meadows would have been eligible for rehire with Fenix as a Project Superintendent had he ever went to Mr. Owen (following the incident) and asked for his old job back. Assuming that Mr. Meadows would have been eligible for rehire, Mr. Owen will testify as to whether he/Fenix would have accommodated for Mr. Meadows' alleged injuries, *i.e.,*

**DEFENDANT'S TRIAL BRIEF**

Fenix' custom and practice for hiring/accommodating people with disabilities.

### IV.  CONCLUSION

Plaintiff Meadows alleges that Schlumberger is responsible for the wireline valve accident that occurred on October 16, 2003. Schlumberger believes that Nabors should bear responsibility for this accident, and will seek to allocate fault to Nabors pursuant to AS 09.17.080.

This accident took place on a Nabors' rig and the driller simply dropped the ball by failing to hold a pre-job meeting, and allowing simultaneous operations to occur. The driller's lapse in judgment put the crews from Vetco Gray, Nabors, and Schlumberger in harm's way. If the driller had exercised proper control over his rig, work priorities would have been established, and simultaneous operations would never have been allowed to occur. Schlumberger should have been instructed to wait while the Vetco Gray service hand fully serviced the well tree. Had this occurred, the leaking swab valve would have been discovered and fixed before Schlumberger went back to work, and the state of the bleed valve on the BOP (open or closed) would have been inconsequential.

Mr. Meadows allegedly suffers from a medical condition that cannot be objectively explained. Assuming that he actually does suffer from this mysterious condition, the evidence will show that his symptomatology may well have begun long before the oilfield accident, a theory which is supported by the plaintiff's lack of candor.

/ / /
/ / /
/ / /

**DEFENDANT'S TRIAL BRIEF**

Finally, Mr. Meadows is capable of working yet he voluntarily and unreasonably chooses not to mitigate his losses.  Video surveillance and the testimony of Mr. Grant Owen will be presented to support this defense.

DATED: September 22, 2006            GRACE HOLLIS LOWE
                                     HANSON & SCHAEFFER
                                     Attorneys for Defendant

                                By:  s/ Shannon W. Martin
                                     Shannon W. Martin
                                     One Ridgegate, Ste. 215
                                     Temecula, CA 92590
                                     Telephone:  951-676-3445
                                     Facsimile:  951-616-9294
                                     Email: smartin@gracehollis.com
                                     ASBA No. 0105028

I certify that on September 22, 2006, a copy of the foregoing was served by ECF on:

Robert A. Sparks   sparkslawoffice@yahoo.com

and by mail on:
Mark Colbert, Esq.

By:   s/Shannon W. Martin
      Grace Hollis Lowe
      Hanson & Schaeffer LLP

**DEFENDANT'S TRIAL BRIEF**