Robert A. Sparks
Law Office of Robert A. Sparks
1552 Noble Street
Fairbanks, Alaska  99701
Phone:  (907) 451-0875
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DARYL MEADOWS ) | |
| ) | |
| Plaintiff, ) | Case No. A05-0032 CIV |
| ) | |
| vs. ) | |
| ) | |
| SCHLUMBERGER TECHNOLOGY ) | |
| CORPORATION ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**PLAINTIFF MEADOWS' TRIAL BRIEF**

Plaintiff Daryl Meadows, by and through his attorney, Robert A. Sparks, hereby provides this Court with Plaintiff Meadows' trial brief.  Plaintiff Meadows will prove that Defendant Schlumberger was negligent in failing to open the pressure relief valve on its blow out preventer (BOP), and that this negligence was the legal cause of the physical injury suffered by Plaintiff Meadows.  Outstanding issues for trial involve admission of records of Defendant's investigation of the incident, admission and use of Defendant's 30(b)(6) deposition testimony, admission of evidence of subsequent remedial measures by Plaintiff's

Meadows v. Schlumberger
page 1

employer Nabors Drilling, exclusion of additional opinions Defendant has stated it intends to have its expert medical witness, Dr. Neil Pitzer, testify to and exclusion of Herb Williams report as unhelpful to the jury and unreliable.

<u>1. Defendant Schlumberger's Negligence Harmed Plaintiff</u>

Plaintiff Meadows will establish at trial that he was injured on October 16, 2003, when Defendant Schlumberger's employees negligently attempted to remove rams from a Blow Out Prevention Valve (BOP) attached to a rig tree (piping) on Nabors Drill Rig at NorthStar Island without opening the pressure relief valve on the equipment. The BOP was owned by Defendant Schlumberger and was in the exclusive possession and control of Defendant's employees prior to the incident injuring Plaintiff.

Defendant contends that Nabors was negligent, because it claims that the Nabor's driller, Jim Wood, is ultimately responsible for what happens on the Nabors rig. There is no evidence that the Nabor's driller, Jim Wood, had any notice that Defendant's employees were proceeding in any unsafe or unreasonable manner. Defendant was the owner of the highly specialized piece of equipment that blew apart and caused Plaintiff Meadows injury. Defendant's witnesses agreed that it was Defendant's employees' responsibility to open the pressure relief valve, prior to attempting to change the rams in the

Defendant's BOP valve.

2.  <u>Admission of John Haynes notes, Plaintiffs Exhibit 118.</u>

Lane Powell, Defendant Schlumberger's attorney, represented BP Alaska pursuant to the 30(b)(6) deposition and subpoena for production of records by Plaintiff Meadows.  <u>See</u> Exhibit "A", 8/25/05 BP Response.  BP's response, through its attorney, Shannon Martin of Lane Powell, was that it had produced "the attached documents BPXA 00001 - BPXA 00275 in response to the plaintiff's 30(b)(6) deposition Notices and records subpoena. <u>See</u> Exhibit "A" 8/25/05 BP Response.

> Mr. Enslow testified as follows at his deposition:
>
> Q: So where was that information?  Was it in a file someplace, how did you get access to it to review prior to your deposition?
>
> A: The information was in a file that I, myself, had kept because of my involvement with the investigation?
>
> Q: Okay.  Did you provide a copy of that file to anyone else previously?
>
> A: Yes, I provided it to my legal staff.
>
> Q: A complete copy of the file?
>
> A: Yes.
>
> Q: An how many pages is in that file, do you know?
>
> A: I don't know offhand.
>
> MR. SPARKS: Well, I think since we're entitled to the documents and – and I'm not sure that he's – that he's referring to the same documents that were produced I'd like to have the witness' copies of the documents

> produced.  Do you guys have a problem with that?
>
> MR. MARTIN: This is – the copy that was produced is the witnesses copy.
>
> MR. SPARKS: Were documents taken out of that that were retained for privileged purposes?  I need – if the witness reviewed a complete copy of the file prior to their deposition I think I'm entitled to a complete copy of the file that he reviewed.
>
> MR. MARTIN: He's – he's reviewed the documents that he said were in his file and those are the documents that were turned over to us.  There's been no documents withheld as privileged.

Exhibit "B" Enslow Deposition excerpt at p. 6.

While the notes were marked as exhibits to Don Enslow's deposition, Mr. Enslow could not identify the author of the notes comprising Exhibit 118.  <u>See</u> Exhibit "B" Enslow Deposition excerpt, p. 125-27.  Mr. Enslow thought that the notes were taken by Dave Hendrick from Schlumberger, but Mr. Enslow was not positive.  <u>See</u> Exhibit "B" Enslow Deposition excerpt, p. 125-27.

The written document comprising Plaintiff's exhibit 118, is titled "Dave Hendrick/Schlumberger Interview Notes".  To the extent that Exhibit 118 is a document prepared by Defendant's employee Dave Hendrick, the document is an admission by Defendant's agent in the course and scope of his employment.  <u>See</u> FRE 801(d)(2).  Mr. Hendrick could have noted any questions that he had with the accuracy of the information that he was receiving from the witnesses, but did not do so in the statement.  <u>See</u>

Exhibit "C" Plaintiff's Exhibit 118.

Furthermore, the investigation and the report prepared regarding the incident injuring Plaintiff Meadows, was a joint product of Schlumberger, BP Alaska and Nabors. See Exhibit "D" Schlumberger 30(b)(6) deposition of Graham Lawrie at 9-10. ("Q: Was it a joint investigation by those parties? A: Yes sir.). The parties' investigation report does not identify any causation issues involving anyone cycling any of the valves on the tree. See Exhibit "E" Incident Report dated October 17, 2003. The parties investigation report represents an adoptive admission of Defendant Schlumberger that the statements by the employees interviewed by Mr. Hendrick were accurate and that the SSV valve was not cycled and that cycling the SSV valve was not a cause of the incident. see W.E. Green v. Baca, 226 F.R.D. 624, 636 (C.D. CA 2005); United States v. Marino, 658 F.2d 1120, 1124-25("Just as silence in the face of an accusation may constitute an admission to its truth, possession of a written statement becomes an adoption of its contents. Adopted admissions are not hearsay and may be admitted into evidence. FRE 801(d)(2)(B)."); U.S. v. Ospina, 739 F.2d 448, 451 (9th Cir. 1984). In this case, each of BP Alaska, Schlumberger, Nabors and Vetco Gray acted of agents of each other in performing the joint investigation and preparing the joint incident report in this case.

Meadows v. Schlumberger
page 5

Furthermore, the contents of Plaintiff's Exhibit 118 were relied upon in preparation of the joint report by Schlumberger, Nabors and BP Alaska, that did not find that cycling of the valves had any involvement in the cause of the incident. The statements in Exhibit 118 are an adoptive admission jointly by Defendant Schlumberger, Nabors and BP Alaska. FRE 801(d)(2).

Defendant's authenticity objection to Plaintiff's Exhibit 118 is contrived, since Defendant's attorney, Mr. Martin, produced the documents to Plaintiff after receiving them from Mr. Enslow at BP Alaska. Defendant's attorney then represented to Plaintiff Meadows' attorney at Mr. Enslow's deposition that the documents produced for the deposition was a complete copy of the file that Defendant's attorney had received from Mr. Enslow. Defendant also provided the documents to its expert, Herb Williams, and Mr. Williams referenced the documents in his report as documents that he had relied upon in preparing his report. Under FRE 703, Plaintiff Meadows should be allowed to introduce Exhibit 118, because its "probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." FRE 703.

Plaintiff Meadows should be allowed to call Defendant's employee Dave Hendrick as a witness to lay a foundation for admission of Plaintiff's Exhibit 118. Alternatively, the

document is admissible as an adoptive admission of Defendant. Alternatively, the document should be admitted as necessary to assist the jury in evaluating Mr. Williams' expert opinion, which is partially based on his review of the documents.

3. Defendant's 30(b)(6) Deposition Conflicts with Its Evidence

Schlumberger's representative testified regarding the investigation report at its 30(b)(6) deposition that:

> Q: Is there anything in that report that you do not believe is accurate?
>
> A: No, sir.  There's some issues that I was party to, discussions, but there's nothing that's written here that I would disagree with.
>
> Q: Are there any conclusions that are reached in that report that you don't agree with?
>
> A: I don't believe so.  I think there's one or two things in here that perhaps just the language that's used is a little bit ambiguous, but in the main, you know, the discussions that I had with the people involved, I was content with the findings that were made.

Exhibit "D" Schlumberger 30(b)(6) deposition, at p. 9-10.

Schlumberger's representative agreed at its 30(b)(6) deposition that the work done by Vetco-Gray had nothing to do with the cause of the incident injuring Plaintiff Meadows. Exhibit "D" Schlumberger 30(b)(6) deposition at 50.

> Q: Well, from the simultaneous operations there was the potential that could have caused a very serious incident isn't it?
>
> A: Yes sir, Yeah.

Meadows v. Schlumberger
page 7

> Q: but the work didn't contribute in any way to the incident where the, where the rams were blown out of the wireline valve in this incident?
>
> A: No sir.

Exhibit "D" Schlumberger 30(b)(6) deposition, at p. 50. Mr. Lawrie was designated by Defendant Schlumberger to testify regarding: "facts and opinions supporting the investigative report titled investigation Report, Northstar Well 29 Wireline Valve Incident, dated October 16, 2003. <u>See</u> Exhibit "F" 30(b)(6) deposition Notice, at 4.

It was not until after the close of lay witness discovery and the production of Defendant Schlumberger's expert witness report that Defendant took the position that any causation issue existed in this case as to the work performed by Vetco-Gray. <u>See</u> "F" Herb Williams 1/30/06 report.

In the January 30, 2006, expert witness report provided by Defendant's expert, Herb Williams, Mr. Williams stated for the first time in this case that "[i]t is possible that during the manipulation of the valves to check them, that the valve may be opened far enough to allow pressure to pass by the gate." <u>See</u> Exhibit "G" Williams report at 3. The reason that Mr. Williams makes this statement is because Defendant wants to claim at trial, contrary to its sworn 30(b)(6) deposition testimony, that the work performed by Vetco-Gray was a possible cause of the

incident injuring Plaintiff Meadows.

Prior to Mr. Williams report, which was not received until following the close of lay witness discovery, Plaintiff Meadows reasonably believed that Defendant Schlumberger did not contend that the Vetco-Gray work had anything to do with the causation of the incident. Defendant Schlumberger has not provided any notice to Plaintiff Meadows that its prior 30(b)(6) deposition testimony was inaccurate or that it needed to be changed in any way.

Evidence contrary to Defendant's 30(b)(6) deposition testimony should either be excluded, or Plaintiff Meadows should be allowed to use Defendant's 30(b)(6) deposition testimony to impeach Defendant's witnesses who testify to the contrary. See W.R. Grace & Co. v. Viskase Corp., No. 990 C 5383, 1991 WL 211647, at *2 ("If a Grace trial witness makes a statement that contradicts a position previously taken in a Rule 30(b)(6) deposition, then Viskase may impeach that witness with the prior inconsistent statement.")

Plaintiff Meadows should at least be allowed to impeach Defendant Schlumberger's witnesses with the 30(b)(6) deposition testimony of Defendant's designated representative.

4. Evidence as to Subsequent Remedial Measures is Inadmissible

One additional issue that has arisen by allowing Defendant Schlumberger to allocate liability to Plaintiff Meadow's employer

Nabors Drilling, is that any measures taken by Nabors Drilling after the accident, in order to reduce the possibility of another incident, are inadmissible under FRE 407. See W.E. Green, 226 F.R.D. 624, 636-63 (discussing difference between reports prepared post-incident and pre-incident). Federal Rule of Evidence 407 provides that:

> When after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent remedial measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent remedial measures when offered for another purpose, such as proving ownership, control or feasibility of precautionary measures, if controverted, or impeachment.

FRE 407. Evidence of changes in Nabor's policies or procedures following the incident are not admissible to prove that Nabors was negligent in causing the incident. FRE 407, W.E. Green, 226 F.R.D. 624, 636-63.

5. Dr. Pitzer's testimony Should Be Limited under Rule 26

Plaintiff raised the issue in his second motion in limine that Dr. Pitzer should not be allowed to testify to opinions beyond those expressed in Dr. Pitzer's original and supplemental report. Neither of these reports stated that cold hands or cold feet or a broken leg years in the past would have any bearing on development of RSD. See Plaintiff's Memorandum at 90-1, 1-6.

Plaintiff has also moved to exclude Dr. Pitzer's testimony based on surviellance videos provided to Dr. Pitzer, but not provided to Plaintiff Meadows on a timely basis to allow Plaintiff Meadows to cross-examine Dr. Pitzer regarding the videos.  Document 69, p 6-7.

6.  Herb Williams Report is Unreliable

Plaintiff objects to any testimony from Mr. Williams under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed. 2nd 469 (1993); Elcock v. Kmart Corp., 233 F.3d 734, 754 - 757 (3rd Cir. 2000); Lituanian Commerce Corp. Ltd. v. Sara Lee Hosiery, 179 F.R.D. 450, 460-462 (D. N.J. 1998)(excluding expert opinion under Daubert because of expert's unfounded assumptions).

In Kumho Tire Company, Ltd v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed. 2nd 238 (1999) the U.S. Supreme Court ruled that the Daubert standard for admission of scientific or technical evidence applies to technical or other specialized knowledge.  The U.S. Supreme Court emphasized that the focus was on ensuring that expert testimony was both relevant and reliable. Id 526 U.S. at 141; Kumho Tire, 526 U.S. at 151.   The U.S. Supreme Court stated that Rule 702 and Daubert, "'establishes a standard of evidentiary reliability'" and that "[i]t requires a valid . . . connection to the pertinent inquiry as a precondition

to admissibility." Id. at 149 (quoting Daubert). The U.S. Supreme Court specifically held that trial courts considering the admission of any technical opinion testimony may consider several specific Daubert factors, including:

--Whether a "theory or technique . . . can be (and has been tested)";

-Whether it "has been subjected to peer review and publication";

--Whether, in respect to a particular technique, there is a high "known or potential rate of error" and whether there are "standards controlling the technique's operation"; and

-Whether the theory or technique enjoys" 'general acceptance' within a 'relevant scientific community."

Kumho Tire, 526 U.S. at 149.

Turning to the tire failure analyst's opinion in Kumho Tire, the U.S. Supreme Court affirmed the trial judge's decision excluding the expert's opinion, because the trial judge "initially doubted and then found unreliable, 'the methodology employed by the expert in analyzing the data obtained in the visual inspection and the scientific basis, if any for such an analysis.'" Kumho Tire, 526 U.S. at 153.

Similarly, in the present case, the methodology employed by Mr. Williams is highly suspect and unreliable, because he failed to review any safety policies of any other company involved in this incident, except Plaintiff's employer Nabors.

Meadows v. Schlumberger
page 12

>Q: Have you reviewed any of Schlumberger's health, safety or environmental policies with regard to this incident?
>
>A: Only as what's produced in the document list that I attached to my report.
>
>Q: Okay. And what documents did you review as far as Schlumberger's health, safety and environmental policies?
>
>A: I don't know if I reviewed any with regard to Schlumberger. I believe they were all Nabors. That's correct. They were all Nabors.
>
>Q: And who provided you with the documents that you reviewed in this case?
>
>A: Mr. Martin.
>
>Q: And whose – is it your understanding he's the attorney for Defendant Schlumberger?
>
>A: Yes.
>
>Q: And did you ask him for any additional documents to review?
>
>A: No, I did not.

Page 16/line 2 - page 17/line 9.

>Q: And does Schlumberger – do you know if Schlumberger has any health, safety, or environmental policies, or any written procedures concerning what they should do when they have air coming out of a lubricator bleed?
>
>A: I don't know.
>
>Q: They should have a policy, shouldn't they?
>
>A: I'm not familiar with their policies and procedures. I couldn't comment one way or another.

Page 18/line 15 - 20.


Meadows v. Schlumberger
page 13

>Q: Have you looked at this from the standpoint of what the health, safety and environmental regulations from Nabors required Mr. Wood to do, but you haven't looked at it from the standpoint of what Schlumberger health, safety and environmental regulations required the Schlumberger crew to do?
>
>A: That's correct.
>
>Q: You haven't looked at what the Vetco Gray health, safety and environmental regulations required them to do either, have you?
>
>A: No.  Only as Nabors is the prime contractor.

Page 42/line 22 - page 43/line 9.

>Q: Do you have any documents concerning safety policies, guidelines, or procedures of Defendant Schlumberger that are in your possession, custody or control?
>
>A: No.
>
>Q: So you've never looked at those?
>
>A: No.

Page 52/line 18 - 24.

>Q: Did you do any work to determine whether Schlumberger had complied with any of its HSE policies prior to this incident as far as training of the employees?
>
>A: No.

Page 84/lines 9 - 14

>Q: But you haven't looked at what Schlumberger did in this situation, did you, whether complied with their policies?
>
>A: No.
>
>Q: That's because you haven't been asked to do that

Meadows v. Schlumberger
page 14

    correct?

    A: That's correct.

Page 88/line 15 - 21.

    Q: You haven't been asked to determine whether Vetco Gray complied with their HSE policies either, have you?

    A: No.

page 89/line 1-4.

    Q: Have you looked at the – any requirements – you haven't looked at any roles and responsibilities of anybody that works for Schlumberger, correct?

    A: No.

    Q: You haven't looked at any roles or responsibility of anybody that worked for Vetco Gray, correct?

    A: No.

Page 92/line 21 - page 93/line 4.

Mr. Williams report is unreliable, because his methodology is too narrow and he intentionally ignored highly relevant safety policies of Vetco-Gray and Schlumberger and only addressed Nabors safety policies in his report and conclusions. There is no evidence that the methodology followed by Mr. Williams is generally accepted in his field or would produce any type of accurate or relevant result. Mr. Williams report and opinions should be excluded as unreliable. Kumho Tire, 526 U.S. at 153.

Meadows v. Schlumberger
page 15

DATED this 22nd day of September, 2006, at Fairbanks, Alaska.

THE LAW OFFICE OF ROBERT A. SPARKS

/s/ Robert A. Sparks
Robert A. Sparks
Attorney for Plaintiff
1552 Noble Street
Fairbanks, Alaska 99701
(907) 451-0875
Fax: (907) 451-9385
E-mail: sparkslawoffice@yahoo.com
Membership No.: 8611139

CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of September, 2006, a copy of forgoing was served by E-Mail on:

Shannon W. Martin
Grace Hollis

Brewster Jamieson
Lane Powell LLC

and by regular mail to:

Mark Colbert, Esq

By: /s/ Robert A. Sparks

Meadows v. Schlumberger
page 16