# RigSafe Inc.

3050 Rocky Cove Drive
Anchorage, Alaska 99507
Phone: 907- 344 - 7163
Fax:    907- 344 - 8251
E-Mail: Williams@rigsafe.com

Monday, January 30, 2006

Shannon Martin
Lane Powell Spears Lubersky LLP
301 W. Northern Lights, suite 301
Anchorage, Alaska 99503

Re:   *Daryl Meadows, v. Schlumberger Technology Corp.*
      Case No. A05-0032 CV (JKS)

Shannon,

As per your request, I have reviewed the case file documents that you provided for the above referenced case (see attached document list). In addition I have attached a current CV for myself, and a services outline for RigSafe Inc.

I believe that the large issues in this case are:

Proper management of simultaneous operations (SIMOPS) on the rig.

   i.   Lack of communications.
   ii.  Problems with well head tree valves leaking.
   iii. Valves being operated on well tree when work is being conducted overhead.
   iv.  Well tree service routine being completed.

I have provided my views on each of these topics. In addition, I have included references to the provided documents, where applicable, that I believe support these opinions.

Respectfully,

*Herb Williams*

Herb Williams,
Drilling Health, Safety, and Environmental Consultant
RigSafe Inc.

## Lack of communications

On a drilling rig, there are several levels of supervision to manage the various tasks that go on during drilling operations. The company man arranges for the equipment to drill and complete the well and ensures that the drilling contractor drills the well according to the engineers plan. The company man goes to the rig on occasion to verify the depth and progress made on the well. His primary contact on the rig is the contractor's toolpusher. The toolpusher works for the drilling contractor and ensures that the rig has the parts, supplies, and people, necessary to drill the well as per the plan provided by the customer. The toolpusher goes to the rig on a frequent basis to check on the mechanical status of the rig, and to ensure the crews are maintaining and operating the equipment properly. The toolpusher communicates with the driller that is on tour at the time. The driller actually operates the drilling rig and is on the rig for 12 hours, except for lunch breaks etc. It is his job to coordinate all activities that take place on the rig during his shift. All non contractor personnel who come onto the rig must check with the driller before conducting any type of work.

The driller's responsibility regarding Simultaneous Operations (SIMOPS) can be described as similar to a traffic cop. A traffic cop must be aware of all vehicles wanting to use his intersection; he must identify the intentions of each driver and stop them or wave them forward so as to not interfere with the drivers wanting to complete opposing maneuvers. Simply put, he decides who will stop and who will go to prevent conflict and accidents in his work area. The driller on a rig has this same position of responsibility. He is the man on the rig who is aware of the intentions of all the people on the rig. He must decide what activities take priority and identify the potential conflicts that may occur, and control the work accordingly.

In the situation on North Star prior to the accident, the documentation clearly shows that the Nabors driller was aware of the needs of the sub contractors on the rig. The Schlumberger Wire Line (SWL) crew contacted the driller when they could not bleed the pressure from their lubricator the fist time. The driller fixed the problem by closing the swab valve on the tree. The driller then called the Vetco-Gray service technician to service the tree valves to stop the leaks. **A this point in time, the leaking valves on the live well should have taken priority over and above any other activity on the rig, period.** According to the documents, the SWL crew and the Vetco Gray service tech were unaware of the others activities. Both parties indicated that they would have stopped what they were doing had they known about the situation. The rig driller failed to coordinate conflicting activities through the pre job meeting requirements identified by his employer as SOP for this type of situation.

## Problems with well head tree valves leaking.

On a live oil or gas well, there are valves that control the pressure and flow of the well. This Christmas tree is the only surface control available to close in the well should problems arise with the production or service equipment down stream of the tree. Any time you identify a problem with this critical barrier, it must be treated as high priority. As I stated before, **leaking valves on the live well should have taken priority over and above any other activity on the rig.** Prior to the incident, the only person who knew the full extent of the leaking valve problem, and what needed to be done to repair the valve, was the Nabors driller. He had told the Vetco Gray technician about the problem and asked him to service the tree valves to stop the leaks, however he did not tell him about the work being conducted on the rig floor.

### Valves being operated on well tree when work is being conducted overhead.

The Vetco Gray technician during his service routine on the tree valves would need to operate the valves to ensure that the grease was being applied properly. When ever this type of work is being done, the well head technician must be in full control of the well head tree assembly. As the well head tech stated, he "checked his valves" and then called the driller to tell him he was closing the actuated master valve. (See Photo 1) When the well head tech checks a valve to see if it is opened or closed, he must move the valve wheel to determine the position of the gate. It is possible that during the manipulation of the valves to check them, that the valve may be opened far enough to allow pressure to pass by the gate. For this reason, it is imperative that the well head tech be allowed to conduct his checks without personnel being exposed down stream of the valves should any pressure be released.

### Well tree service routine being completed.

The Vetco Gray technician was conducting a full service routine on the well tree valves. The service routine requires the tech to pump grease into each of the valves and then operate the valves to ensure that the grease is properly distributed within the valve body. As he works his way up the tree greasing and operating the valves, he would in the end have opened all of the valves on the tree. Therefore, if the well head tech would have been allowed to complete his service routine on the tree, in all probability he would have discovered that the swab valve was leaking, and could have safely bled the pressure off the lubricator above the swab valve. In short, regardless of whether the bleed valve on the BOP was opened or closed, if the Vetco Gray tech had been allowed to finish servicing the tree, this accident would not have happened.

#### In Summary

1. The problems with the leaking valves constituted a fundamental change in the work scope, which according to Nabors policy should have triggered a pre-job hazard mitigation meeting to discuss with all parties the plan forward.
2. It was the driller's responsibility to coordinate all the work processes being conducted on the rig during his shift and to conduct pre-job meetings as required to communicate with all parties involved.
3. The leaking valves were not identified as a priority for stopping other work activities that maybe affected by the repairs.
4. The service tech was not allowed to complete his service routine prior to the work being done on the BOP on the rig floor

This incident is a result of not following Nabors standard operating procedures for SIMOPS activities, and the requirements for pre-job meetings and stop work policies.



Photo 1
Typical Vetco-Gray Well head tree assembly on North Star Island.

Documents reviewed By Herb Williams, RigSafe Inc.
Daryl Meadows v. Schlumberger Corporation

| Item | Date | Doc Type | Summary |
|---|---|---|---|
| 1 | 12/18/05 | Complaint | Complaint filed by Meadows |
| 2 | 3/18/05 | Answer | Answer to Complaint |
| 3 | 8/19/05 | Motion | Motion for rule of law to allocation of fault to emp. |
| 4 | 6/1/05 | Disclosures | Plaintiff's Initial disclosure statement |
| 5 | 10/16/03 | Investigation Report | 000153-177 by plaintiff |
| 6 | 6/2/05 | Disclosures | Defendant's Initial disclosure statement |
| 7 | 3/30/05 | Accident repot | DEF 00001-4 Nabors accident report |
| 8 | 6/28/05 | Investigation Report | DEF 00005-27 report dated 10-16-03 |
| 9 | 7/21/05 | Discovery resp | Plaintiff's response to first discovery requests |
| 10 | 8/17/05 | Discovery resp | Defendant's response to first discovery requests |
| 11 | | Supplemental docs | Def 00028-55 |
| 12 | 8/11/05 | Deposition | Daryl Meadows |
| 13 | 8/29/05 | Deposition | Don Enslow Vol 1 |
| 14 | 8/30/05 | Deposition | Don Enslow Vol 2 |
| 15 | 8/4/05 | Deposition | Ruth Germany-Bice |
| 16 | | 30 (b) (6) Responses | BPXA Docs 00001 – 275 |
| 17. | | | Nabor's Drillers book |
| 18 | | Manual | Nabor's Health and Safety Manual |
| 19 | 9/29/05 | Deposition | Robert C. Tilbury |
| 20 | 9/30/05 | Deposition | Johnie N. Haynes |
| 21 | 10/24/05 | Deposition | Jim Wood |
| 22 | 12/12/05 | Deposition | James Craig Lott |



9050 Rocky Cove Drive
Anchorage, Alaska 99507
Phone: 907- 344 - 7163
Fax:    907- 344 – 8251
E-Mail:Williams@rigsafe.com

# Curriculum Vitae

**Herb Williams**
**Drilling Heath, Safety, and Environmental Consultant**
**RigSafe Inc.**

CURRENT:

Drilling HSE consultant and principal of RigSafe Inc. Providing HSE support for oil well drilling and work over operations on the North Slope of Alaska and worldwide.

1985 – 1999

Health, Safety and Environmental Manager
Pool Arctic Alaska Drilling Company
Anchorage, Alaska

Duties Included:
Establish and maintain HSE management systems for large North Slope drilling company.
Accident / Incident investigation.
Training and employee development.
Equipment and systems auditing.
Manage company loss control program.
Manage Local, State, and Federal safety and environmental compliance issues.
Manage Contractor / Oil company HSE interfaces.
Review and advise management on contract HSE language.

1970 – 1985

Held various positions with contract drilling and service companies including all positions from roustabout to toolpusher.

Loffland Brothers Drilling Company
Pioneer Drilling Company
Dixyland Field Drilling Company
Cleancoat Oilfield Services Company

Training and Education
HS Graduate, Natrona County High School, Casper, Wyoming
Two years college study, Engineering, No degree
Certified Hydrogen Sulfide Safety instructor ASSE
First aid / CPR Instructor EMP America
Taproot® Accident Investigation
Dupont Safety Management
North Slope Training Cooperative


Case Reviews by Herb Williams

Alaska

| | |
|---|---|
| Shurtleff v. BP Exploration | Slip and Fall |
| Richardson v. ARCO Alaska | Rig Injury |
| Tremelling v. UNOCAL | Rig injury |
| Zoubeck v. UNOCAL | Rig injury |
| Huf v. ARCO Alaska | Rig injury |
| McCants V. ARCO Alaska | Slip and fall |
| Martinson v. ARCO Alaska | Slip and fall |
| Chappell v. BPXA | Rig Injury |
| Jack H. Brewer v. Nabors Alaska | Rig Injury |
| Clonts V. McKinley Services | Rig Injury |

Colorado

| | |
|---|---|
| McCord v. Kimzey Casing Service | Rig injury |



**RigSafe Inc.**

Products and Services

HSE Systems Reviews
Safety and Environmental Audits
Accident / Incident investigation
Safety and Environmental system development
Onsite HSE support
Legal review and consulting services