Shannon W. Martin
ASBA No. 0105028
GRACE HOLLIS LOWE HANSON & SCHAEFFER, LLP
One Ridgegate, Ste. 215
Temecula, CA 92590
(951) 676-3445
(951) 676-9294- Fax
smartin@gracehollis.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| DARYL MEADOWS, | Case No. 3:05-cv-00032-TMB |
| Plaintiff, | |
| vs. | |
| SCHLUMBERGER TECHNOLOGY CORPORATION, a foreign corporation, | **DEFENDANT'S OPPOSITION TO PLAINTIFF'S THIRD MOTION IN LIMINE RE DR. SCHADE'S FEE AGREEMENT** |
| Defendant. | |

COME NOW Defendant Schlumberger Technology Corporation, by and through its attorneys of record, Grace Hollis Lowe Hanson & Schaeffer LLP, and hereby submits its Opposition to Plaintiff's Third Motion *in limine* re Dr. Schade's Fee Agreement.

Plaintiff contends that defendant should not be allowed to argue at trial that Dr. Schade's medical treatment and billings are the product of a contingent fee arrangement. Plaintiff's arguments for exclusion go to weight, and not admissibility, as Dr. Schade's fee arrangement is exceedingly relevant to show bias. In United States v. Abel, 469 U.S. 45, 50-51 (U.S. 1984), the court discussed the

admissibility of bias evidence and held:

> A successful showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony. The correctness of the conclusion that the Rules contemplate impeachment by showing of bias is confirmed by the references to bias in the Advisory Committee Notes to Rules 608 and 610, and by the provisions allowing any party to attack credibility in Rule 607, and allowing cross-examination on 'matters affecting the credibility of the witness' in Rule 611(b). The Courts of Appeals have upheld use of extrinsic evidence to show bias both before and after the adoption of the Federal Rules of Evidence.

Contingent fee arrangements are expressly discussed and proscribed by the AMA Code of Ethics, Section E-6.01, a copy of which is attached hereto as Ex. A, providing as follows:

> If a physician's fee for medical services is contingent on the successful outcome of a claim, such as a malpractice or worker's compensation claim, there is an ever-present danger that the physician may become less of a healer and more of an advocate or partisan in the proceeding. Accordingly, a physician's fees for medical services should be based on the value of the service provided by the physician to the patient and not on the uncertain outcome of a contingency that does not in any way relate to the value of the medical service.

Plaintiff's co-counsel, Robert Sparks, attempts to explain away the state of the evidence by arguing that his co-counsel, Mr. Colbert's letter to Dr. Schade dated November 28, 2005, does not really mean what it very succinctly says:

> Per our representation of Daryl in the above-referenced action which resulted from an explosion on October 16, 2003, **this letter guaratees payment of the above-referenced account from the settlement funds obtained in this matter.**

*See* Ex. B hereto.

Dr. Schade was asked about this letter on cross-examination during his perpetuation deposition held on March 27, 2006, and testified as follows:

> Q. And here is your copy, just to refer to. This letter says, Dr. Schade, per our representation of Daryl in the above-referenced action which resulted from an explosion on October 16, 2003, this letter guaratees

2

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S THIRD MOTION IN LIMINE**

```
                  payment of the above-referenced account from the
                  settlement funds obtained in this matter.
                  Did you obtain this letter?
             A.   Yes.
             Q.   Is that your understanding, is that you're guaranteed
                  payment for anything you do in the way of treatment?
             A.   Provided there's sufficient funds to pay for it.
```

*See* Dr. Schade deposition, at p. 68-69, excerpt attached hereto as Ex. C.

Plaintiff's counsel, Mark Colbert, was present at Dr. Schade's perpetuation deposition, yet Mr. Colbert neglected to rebut this line of questioning, or to otherwise "rehabilitate" his witness. According to Dr. Schade's own testimony, he gets paid for any and all treatment that he provides to the plaintiff "provided there's sufficient funds to pay for it." Stated differently, Dr. Schade only gets paid if the plaintiff prevails in this lawsuit, or, stated differently yet, Dr. Schade does not get paid if, after the trial is over, there are insufficient funds to pay for his bills.

This evidence is highly relevant to show that Dr. Schade is "less of a healer and more of an advocate or partisan in this proceeding"; that Dr. Schade's recommended course of treatment is not reasonable and necessary and falls below the standard of care for a treating physician.

Between October 16, 2003 (the date of the accident) and November 2005 (when plaintiff retained his expert, Dr. Schade), Mr. Meadows' medical treatment was limited to the following:

- two weeks of physical therapy (January 15 through January 28, 2004),
- limited treatment with Dr. Hines in January 2004,
- limited treatment with Dr. Noe between April and September 2004, during which he received one lumbar sympathetic

3

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S THIRD MOTION IN LIMINE**

        block, and

- limited treatment with Dr. Montgomery beginning in February 2004, and ending with an arthroscopic knee surgery in November 2004.

Mr. Meadows initially consulted with Dr. Schade on November 21, 2005. Just five days later, on November 26, 2005, Dr. Schade opined that Mr. Meadows was suffering from CRPS I, and was in need in future medical treatment totaling nearly $1,000,000. Without verifying or even considering whether Mr. Meadows had undergone any conservative therapy in the two years following the accident (which occurred on 10/16/03), Dr. Schade hastily opined that Mr. Meadows was in need of the most invasive and lucrative treatment options, including a spinal cord stimulation trial and permanent implant. Dr. Schade's incentive to "overtreat" seems relatively obvious, as does his incentive to diagnose future medical treatment at exorbitant costs of nearly one million dollars, as does his incentive to turn a blind eye to important medical records, including his patient's own admission, which show that he (Meadows) suffered a broken leg prior to the accident, including symptoms of CRPS less than two years prior to the accident.

Even more, plaintiff intentionally withheld Mr. Colbert's November 28, 2005, letter to Dr. Schade, from defendant even though defendant propounded production requests as follows:

"Please produce any document which in any way pertains to any expert you expect or intend to call as a witness at trial."

"Please produce a complete copy of all correspondence to, or received from, any experts in this matter."

*See* Defendant's First Discovery Requests, attached hereto as Ex. D.

4

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S THIRD MOTION IN LIMINE**

Up until Dr. Schade's discovery deposition in February 2006, defendant believed that plaintiff had disclosed Dr. Schade's complete file pertaining to Mr. Meadows, including all correspondence between plaintiff's counsel and Dr. Schade. However, during Dr. Schade's discovery deposition, defendant uncovered the Colbert letter, which was buried deep within the file that Dr. Schade brought with him to the deposition. Had defendant not asked to make Dr. Schade's file an exhibit to the deposition, the Colbert letter would have remained a buried secret. Incidentally, the Colbert letter was the one and only letter between Mr. Colbert and Dr. Schade that was not disclosed prior to Dr. Schade's deposition.

Clearly plaintiff did not expect that defendant would get ahold of the Colbert letter. But defendant did not create the state of the evidence, nor is defendant making up the ethical guidelines adopted by the American Medical Association, a nationally respected organization of which Dr. Schade is a member. *See* Dr. Schade CV, attached hereto as Ex. E. Mr. Sparks asks the court to adopt his subjective interpretation of what Mr. Colbert meant, but Mr. Colbert's letter, including the inquiry of Dr. Schade under oath, speak volumes. This evidence shows very plainly that Dr. Schade is not at all a treating physician, but an expert who has been guaranteed payment for any and all treatment that he provides regardless of cost provided sufficient funding is available from the outcome of this litigation.

For the foregoing reasons, Dr. Schade's treatment and billings should be excluded as not medically necessary. Alternatively, defendant is entitled to have the court take judicial notice of Section E-6.01 of the AMA Code of Ethics, as such facts are not subject to reasonable dispute, and are capable of ready and accurate determination by resort to sources whose accuracy cannot reasonably

5

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S THIRD MOTION IN LIMINE**

be questioned. *See* Fed. R. Evid. 201. Additionally, defendant should be allowed to inquire of its own expert, Dr. Pitzer, as to the appropriate standard of care applicable to a physician treating a patient for CRPS I, including whether Dr. Schade's course of treatment and fee arrangement poses an ethical dilemma, and the reasons therefore.

DATED: September 28, 2006          GRACE HOLLIS LOWE
                                   HANSON & SCHAEFFER
                                   Attorneys for Defendant

                              By:  s/ Shannon W. Martin
                                   Shannon W. Martin
                                   One Ridgegate, Ste. 215
                                   Temecula, CA 92590
                                   Telephone: 951-676-3445
                                   Facsimile: 951-616-9294
                                   Email: smartin@gracehollis.com
                                   ASBA No. 0105028

I certify that on September 22, 2006, a copy of the foregoing was served by ECF on:

Robert A. Sparks  sparkslawoffice@yahoo.com

and by mail on:
Mark Colbert, Esq.

By:    s/Shannon W. Martin
       Lane Powell

6

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S THIRD MOTION IN LIMINE**